UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA, ALEXANDRIA DIVISION

KHALIF ABDUL QAWI MUJAHID
KEITH EUGENE GAFFNEY-BEY / AKA
                    Petitioner

V.                    NUMBER:

UNITED STATES OF AMERICA

KHALIF A.Q. MUJAHID MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. 3582 (C)(1)(A)

Now, comes Petitioner's Khalif A.Q. Mujahid's motion for Compassionate release pursuant to 18 U.S.C. (C) (1) (A) requesting that this court vacate my Federal Life sentence, among others, and reimpose Time-Served for my serious medical conditions, my Elderly age, my post sentence rehabilitation, my Time-Served, my 24-years in 22-hour per day lock-up in this Federal SuperMax prison, my propensity to become seriously ill or die from Covid-19. Fundamental Fairness and equity, among other extraordinary and compelling reasons for this court to take a second look at resentencing under the spirit and intent of the Amended provisions of the 2018 First Step Act, Pub. L. No. 115-391.

BACKGROUND / INDICTMENT

Petitioner, Mujahid, was indicted on February 4,

1995, in the district court of Alexandria, Virginia, in a prison drug distribution ring, for sales in the now defunct Lorton, medium security prison, based on the purchased testimony of admitted drug addicts, and inmates testifying for plea bargains on their pending cases, and paid inmates who were government informers who admitted under oath that they were paid to testify on other Lorton, prison cases.

The indictment resulted in 10-counts. Count one, conspiracy to possess and distribute heroin and hydromorphine, in violation of 21 U.S.C. 846; Count two, engaging in a criminal enterprise in violation of 21 U.S.C. 848(B); Count three, obstruction of justice, in violation of 18 U.S.C. 62, and 1503; Count four, six, and eight, assault with a dangerous weapon, in violation of 18 U.S.C. 2, and 113 (c); Count five, assault with intent to commit robbery, in violation of 18 U.S.C. 2, and 113 (b); Count seven, assault, in violation of 18 U.S.C. 2, and 113 (b); Count nine, possession with intent to commit and distribute hydromorphine, in violation of 21 U.S.C. 841 (a); and count ten, assault with intent to commit murder, in violation of 18 U.S.C. 2 and 113 (a).

## Original Convictions

Petitioner was originally found guilty on counts one, two, five, eight, and nine. However, the Fourth Circuit Court of Appeals, vacated count one, conspiracy to possess and distribute heroin and hydromorphine in violation of 21 U.S.C. 846, and remanded

the case back to the District court for resentencing.

November 19, 1996 Resentencing

The court sentenced petitioner to life without the possibility of parole for count two, C.C.E. 848(B) to run consecutive from petitioner's D.C. Code sentence, and sentenced petitioner on counts five, eight and nine, with sentences to run concurrent, with five years supervised release on counts two, and nine, and three years supervised release on counts five and eight. Petitioner was ordered to pay a $250.00 special assessment to the court.

Prior Procedual History

U.S. v. Gaffney, 1996 U.S. App. Lexis 24013 4th Cir. C. App. Sep. 11, 1996; Mujahid v. U.S. 519 U.S. 1068 (1997) cert. denied; U.S. v. Gaffney, 139 3d. 849 (4th Cir.) 1998 writ of habeas corpus denied; Mujahid v. Berkebile, 2014 U.S. Dist. Court Lexis 20384 (D. Colorado Feb. 19, 2014); U.S. v. Gaffney, 2015 U.S. App. Lexis 13047 (4th Cir. July 28, 2015); U.S. v. Mujahid, No.: 18-6050; appeal from the district court No.:(1:95, CR-00053-LMB-1) (4th Cir. March 16, 2018) unpublished opinion Rule 60-(B) motion 4th Cir. agreed was a successive 28 U.S.C. 2255, that did not satisfy the successive 2255 authorization requirements.

Relevant Background History

Petitioner has been incarcerated for 47-years, and 3-months, and was arrested when i was 19-years old in the District of Columbia.

3.

Petitioner was indicted in February 9th 1995, after being incarcerated for 21-years, and 5-months in the Eastern District County of Alexandria, Virginia, on my Lorton prison, drug case.

Petitioner is now 66-years old, with serious medical conditions which consist of untreated hepatitis-C, enlarge prostate, that has been operated on once 6-years ago, and i am still being medicaid for macular degeneration in my left eye, that i'm taking medication for, and moderate asthma, that i've had all of my life, i.e. a lung disease that is a CDC pre-existing condition that put me at a grave risk of succumbing/dying from Covid-19, in this supermax prison, because several officers, and inmates has been tested positive, and infected with the coronavirus.

This supermax prison is really a government torture chamber where petitioner unjustly has been buried alive in 22-hours per day lock-up since 1996. Petitioner has been housed here at supermax for 24-years in major part for no fault of my own, in extreme isolation which is torture. Petitioner became an high profile prisoner for several reasons. One, the U.S. Attorneys, asked my trial judge to order me sent here to supermax, at my sentencing hearing; two, i became a professional boxer while incarcerated in the Lorton prison, in 1981, and have a serious reputation among D.C. prisoners, and other prisoners that have known me throughout the federal system; three, i was sentenced to a life sentence for a fabricated prison drug case from retaliation from Lorton prison officials, that has garnered numerous magazine

4.

articles, and novels written about me because of this made-up and manufactured prison drug kingpin case; and four, i am a Black D.C. prisoner that the Federal Bureau of prisons has labeled me the leader of D.C. prisoners because of my long-tenure in prison of 47-years now, and the notoriety of my Norton prison case. I've been housed here at this super-max prison for 24-years, and the average stay here for prisoners is 3-to-4-years, and then transferred to a regular U.S. penitentiary that is a less secure prison.

The officials here at ADX, and the Bureau of prisons has kept me here due to a well documented and historic war with the D.C. Black prisoners, and a white supremacy gang, that is infamous for terrorizing this Federal Bureau of prison, and murdering other prisoners. This war dates back to early 1980's, after several Black prisoners were murdered.

Eventhough, petitioner has been in this federal system for years in the 1970's, but I've also went back to the D.C. Department of Corrections during my incarcerations, and in 1981, was sent back to D.C. Department of Corrections per Federal Court order, from Marion Illinois. However, petitioner came back in this Federal BOP in March, 1983, and in August, 1986, petitioner was stabbed while housed at the U.S. penitentiary Terre Haute, Indiana, by two members of the white supremacy gang, and i was sent back to U.S. penitentiary, Marion, Il, and the two assailants were sent back to their state prison.



Petitioner, was sent back to the D.C. Department of Corrections, per Federal Court order in August 1988, to do my D.C. Code sentence. Petitioner came back into the Federal BOP on May 17th, 1994, after the U.S. Attorneys office in Alexandria, asked the Justice Department to move me to U.S. Penitentiary, Marion, Ill. while they seek an indictment."

Petitioner became a devout Muslim in 1995, and in 1996, had my name legally changed in the D.C. Superior Court. In my efforts to pursue years of rehabilitation by programming here, while housed in extreme isolation is nothing short of extraordinary which are all facts among others this court can reconsider at resentencing. If this court finds that resentencing is warranted under the revised First Step compassionate Relief Act, for the extraordinary and compelling reasons detailed herein, as it should as a matter of facts and law.

## Jurisdiction

On November 18th, 2020, Petitioner filed a official written request to the warden requesting that he support compassionate release. The warden has 30-days to approve, deny, or not respond before a petitioner has satisfied the exhaustion requirements and proceed to the court. The warden responded to my request on December 3, 2020, denying my request with his standard procedural letter that he use's denying all request for compassionate release, because his response is inaccurate about i have not served at least 50% of my sentence. (SEE RESPONSE).

Therefore, consequently the motion is now ripe for this court's determination. Jurisdiction is invoked under 18 U.S.C. 3582 (c)(1)(A). Request to warden, resulting in exhaustion.

## CLAIMS

1. Petitioner is a 60-year old black male, whom upon information and belief has untreated Hepatitis-C, macular degeneration in my left eye, enlarged prostate (that I had surgery on 6-years ago) and moderate asthma, that the CDC considers a pre-existing lung disease that put me in grave danger, and becoming seriously ill, or dying from Covid-19, that is now in this Super-max prison, with several officers, and staff members, and inmates being infected with the virus. On November 23, 2020, the warden put a bulletin on the T.V. screen, that the prison was being put on lock-down because of the recent infections of staff and inmates.

Petitioner's housing unit K/B is the only unit on quarantine in this prison since November 23, 2020, because of inmates testing positive of the virus. Our temperature is being taken every day by health services, and we have been tested weekly to see if anymore inmates has been infected. Sadly more inmates has tested positive and removed to be placed in isolation. We have not been allowed to go to the commissary since being placed on quarantine because no officers or staff is allowed to enter my housing unit that is now assigned to the unit, except medical staff because of staff fear of becoming infected.

7.

2. It was not this court's intent that i spend the last 24-years in a cage 22-hours per day at this Federal Super-Max — because when the Assistant U.S. Attorney, requested that Judge James C. Cacheris, order that petitioner be sent here at sentencing, Judge Cacheris, told him that he could not order me sent here, and it would be up to the BOP, where i'm to be designated. Thus i was sent back, to U.S. Prison, Marion, Ill.

3. This Super-Max prison is documented to be one of the most isolating, and psychologically debilitating prisons on earth. A condition of confinement that experts found, and have documented to cause, and exacerbate mental illness, and physical decay. Which is punitive punishment in addition to my serious medical conditions. My propensity to maybe die from Covid-19 that can be considered another extraordinary and compelling reasons to grant me compassionate release.

4. Petitioner was sent here from U.S. Marion, penitentiary 24-years ago after a disturbance between D.C. inmates and the previously mentioned white supremacy group. Although petitioner was not involved, and lived in another housing unit during the melee, the administration in Marion still used that to transfer me here to ADX, Super-Max.

SEE: U.S. of America v. Henry Michael Houston, and Wayne Bridgewater, U.S.C.A. for the 9th Circuit 648 F.3d 806; March 8, 2011 - August 3, 2011. Also See: U.S. of America, v. Tyler Bingham and Edgar Hevle, 653 F.3d 983 March 8, 2011, For the 4th Circuit court of App.

8.

This will give you a better understanding of the magnitude of the history of the war between D.C. prisoners, and their rival the white supremacy group.

However, in 2013, former warden, D. Berkebile, came to see petitioner, and told me that he was going to get me transferred to a state prison back east, because of my clear conduct, and positive behavior, and because of my years of programming, and mainly to separate me from ongoing gang activity involving rival gang members, although petitioner is not in a gang, but a devout Muslim.

In 2014, Mr. D. Berkebile came and told me that the Regional Director denied his transfer referral recommending that i be transferred to a state prison. Mr. Berkebile, instructed petitioner to continue to program, and keep a clear conduct, because they were going to resubmit another transfer referral in one year, because i deserved to be transferred like all the other inmates here, and particularly D.C. inmates that had programmed their way out of here and transferred to other U.S. prisons.

Mr. Berkebile then came back to see me and told me that he was retiring, but his two associate wardens, and my unit team knows that he really wanted to transfer me out of here, and they know to resubmit another transfer referral, and recommend that i be transferred to a state prison. Mr. Berkebile, also let me know that he would let his successor know, what happened when he asked



petitioner be transferred to a state facility to his supervisor the Regional Director, who denied it. In 2015, when Mr. John Oliver, became the Warden, and was told of petitioner's circumstances he sent another transfer referral to the Regional Director, and made a personal telephone call to him, and told him that he wanted me transferred, because i deserved to be moved back east. The Regional Director approved for the designating office to find a state prison to accept me.

The next Warden, Mr. Jack Fox, who succeeded Mr. Oliver, knew me from when he was the associate warden here years ago. He ordered his staff to follow up on my transfer and have me moved. He told me that they were still trying to find a state prison to accept me. Mr. Fox retired in 2018, and his successor was Mr. Andre Matevousian, who made a personal visit to come see me, and told me he was going to make sure he get me out of super max, and he was ordering his staff to call the designating office every 30-days to see where my name was on the list for transfer.

In April 2019, Mr. Matevousian told me that his staff said i was number one on the list to be transferred to a state prison. In May, 2019, one of the lieutenants went behind Warden Matevousian's back, and had me locked up and put me in segregation, and then she lied and wrote a false, and erroneous disciplinary report on me, and said i threatened to fight the officers, while on the telephone to have my transfer denied. Warden Matevousian listened to my call and dismissed the disciplinary report.



However Warden Matevousian, was promoted to Deputy Director of the Bureau of Prisons, and moved to D.C., while i was still in segregation. His successor, who is the present warden, Mr. B. True, told me my transfer was denied in September 1st, 2019, and that i should remain here in Supermax. Mr. True, kept petitioner in segregation for 16-months, although staff members were asking Mr. True to put me back in the Adult Housing Transition Unit.

The court can consider that i found religion in 1995, that i am back in the Adult Housing Unit, which is considered the Honor Unit, and the only unit in this super max with the most privileges, where prisoners are trusted to have physical contact with staff, and have recreation with other inmates without handcuffs. The court can consider the fact that petitioner obtained approximately 45 educational certificates in the 24-years i've been here that support my pursuit of post sentence rehabilitation for years.

Rehabilitation efforts that are extraordinary when compared to the documented fact that inmates of the ADX community go crazy due to the years of social and environmental deprivational as indicated in public record litigation among other reasons stated herein.

## Compassionate Release Legal Standard.

The First Step Act Amended 18 U.S.C. 3582. In section 603 of the Act, Congress Amended 3582 (c) (1) (A) to permit defendants

11.

to move a sentencing court for modification of sentence after either the defendant has fully exhausted all administrative remedies for failure of the BOP to bring a motion on the defendants behalf for compassionate release or the lapse of 30-days from the receipt of such a request to the warden, whichever is earlier.

Section 3582 (c) (1) (A) provides in pertinent part:

The court... may reduce a term of imprisonment (and may impose a term of probation or supervised release, with or without conditions that does not exceed the unserved portion of the original term of imprisonment). After considering the factors set forth in Section 3553 (a) to the extent they are applicable, if it finds that.

(I) extraordinary and compelling reasons warrant such a reduction; and that such a reduction is consistent with applicable policy statements issued by the sentence Commission.

The statute does not limit or define what constitutes extraordinary and compelling reasons; see: 28 U.S.C. 994 (t). Instead Congress directed the sentencing commission to promulgate the criteria applied and a list of specific extraordinary and compelling examples. Id. as a result the application notes to U.S.S.G. 1 B1.3. enumerted five circumstances that establish extraordinary and compelling reasons to reduce a defendants sentence. The first two relate to a defendants medical conditions. The standard is satisfied if the

12.