if the defendant is suffering from a terminal illness with an end of life trajectory. U.S.S.G. 1.B.1. 13 CMT. N.1 (A) (1). It is also satisfied by a serious physical or medical condition, serious functional or cognitive impairment or, deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self care within the environment of a correctional facility, and from which he or she is not expected to recover. ID I.B.I. 13 CMT. N. (1) (A) (ii).

The 3rd reason is if the defendant is 65-years old; (II) is experiencing a serious deterioration in physical or mental health because of aging process... However, the age has been reduced to 60-years old in the revised First Step Act, and (iii) the defendant has served at least 10-years or 75% of his or her term of imprisonment whichever is less. I.D. 1B1 13 CMT N. 1 (B), (however 503 (6) (1) (B) of the revised First Step Act eliminates the amount of time served reference above as a criteria). The fourth reason is family circumstances requiring the defendant to care for a minor child or spouse or registered partner. I.D 1B1 13 CMT N.1 (C).

## CATCH-ALL-PROVISION

The 5th reason is a catch all provision that allows the BOP Director to determine there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with the examples described above. ID 1B1 13 CMT N.

1(D) (However, as a result of the First Step Act, removing the BOP Director criteria, to file a motion compassionate release). It's now up to the court to determine what other reason by itself or in combination with the above is extraordinary.

## REHABILITATION

The First Step Act of 2018, amended numerous provisions of the U.S. Code to promote rehabilitation of prisoners and curtailing decades of mass incarceration. Congress research service, R45558, The First Step Act of 2018: An overview 1 (2019). Congress designed the statute at issue here §3582 (C) (1) (A), for increasing transparency of compassionate release 003 (D) 132 Stat. at 5234. Congress has provided a limitation and that is rehabilitation alone, shall not be considered an extraordinary and compelling reason, 28 U.S.C. 994 (t) (emphasis added). However Congress made it clear that obviously rehabilitation could be considered with other extraordinary and compelling reasons sufficient to resentence people in individual cases.

Indeed the use of the modifier alone signifies that rehabilitation can be used in tandum with other factors to justify a reduction. Congress as stated, never defined what constitutes extraordinary and compelling, see: 28 U.S.C. 994. However Congress and the Commission gave two general guideposts. Extraordinary and compelling "reasons" need not have been unforeseen at the time of sentencing".

14.

Id. § 1B1.13 cmt. n.2. For example, just because a judge believes a defendant will dramatically improve himself while incarcerated, that does not mean the court cannot deem such improvement extraordinary and compelling. And as stated, although rehabilitation alone shall not be considered extraordinary, it may be considered with other factors, Congress made clear. Id.

After the 2018 First Step Act, the Sentence Commission "never" updated its policy statement. Rather the outdated policy statement still erroneously assumes compassionate release may only be granted upon a motion by the BOP Director. U.S.S.G. § 1B1.13 cmt. n.4

## LEGAL ARGUMENT

The Commission's failure to update the policy statement has left district courts in a conundrum. On the one hand, Congress unequivocally said it wished to increase the use of compassionate release by allowing district courts to grant petitions consistent with the applicable policy statements from the Commission. § 3582(c)(1)(A) (emphasis added). On the other hand, the Commission has not made the policy statement for the old regime applicable to the new one. Therefore, many courts have concluded this means the Commission lacks an applicable policy statement regarding when a court can grant compassionate release. U.S. v. Brown, No. 4:05-CR-00227-1, 2020 WL 2091802, at *6 (S.D. Iowa, April 29, 2020) (appeal dismissed following the gov't's request, No. 20-2053 (8th Cir. June 16, 2020).



United States v. Haines, No. 93-CR-1043 RJD, 2020 WL 1941478 at 14, (E.D.N.Y. April 22, 2020) (citing thirteen such cases). In absence of a updated policy statement these Courts have concluded that the sentencing Court can determine whether any extra ordinary and compelling reasons other than those delineated in U.S.S.G. J.B.1.13 CMT. N.1. (e)-(c) warrant granting relief. Cann, 423 F. Supp. 3d 345 2019 WL 2498923 at x 5:" See: Also U.S. v. Fox, No. 2:14-CR-03/DBH, 2019 WL 3046086 at x 3 (D.ME. July 11, 2019) treating the previous BOP discretion to identify other extraordinary and compelling reasons, is assigned now to the courts.

The result is that the district court can now consider anything on at least anything the BOP could have considered, when assessing a defendant's motion. This now appears to be the majority opinion/position. U.S. v. Scott, No.14-CR 156, 2020 WL 2508894 at x 8 (E.D. Wis. May 15, 2020). It is also safe to say congress is aware of the law during the pandemic. See: Congress Research Service, R46297, Federal prisoners and Covid-19. Background and authorities to grant release 4, (2020).

However, some courts and the government still maintain that the First Step Act only allows courts to grant a motion for compassionate release, if the BOP Director would have done the same under the sentencing guidelines, and the BOP program statement written for the

old law. These courts conclude they may not stray beyond the specific instances listed in I.B.I. 113's commentary. (E.g. U.S. v. Lynn, No. CR 89-0072-WL 3805399, At *4, C.S.D. Alabama, August 13, 2019). The reason that the sentence commission reserved that commentary's residual pro- vision for the BOP Director, and only the BOP Director.

But this court must be unpersuaded by the minority position. The U.S. Supreme Court repeatedly has noted that the title of a statute and the heading of a statute section are tools available for resolution of doubt about the meaning of a statute.

Alemendarez-Torres, v. U.S., 523 U.S. 224, 234, (1988), although titles are not dispositive, sometimes they can be especially valuable. Yates v. U.S. 574, 552 (2015) (Alito, J. concurring). Such as is the case here. The fact listed these changes under the title of increasing the use and transparency of compassion- ate release. 003 (B), 132 Stat. At 5239.

Congress knew that the BOP rarely granted compassionate release petitions. See: Hearing on Compassionate Release and the Conditions of Supervision, before the U.S. Sentencing Commission, (2016) (statement of Michael E. Horowitz, Inspector General of the department of Justice). In 2013, 24-inmates were released. between August 2013, until September 2014, the number increased to only 83 inmates. As a result Congress overturned the statute, leaving

it to the courts to increase the use of compassionate release, and so the courts could consider the vast variety of reasons that maybe extraordinary and compelling. (emphasis added).

Moreover, Congress, and the Supreme Court have long trusted district courts to consider every convicted person as an individual, and every case as a unique study in the human failings, that sometimes mitigate and sometimes magnify the crime and punishment to ensue: Koon v. U.S., 518 81, (1996). In sum, 3582, (c) if the First step Act, is to increase the use of compassionate release, the most natural reading of the statute, 3582, (c) is that Now the court assumes the same discretion as the Bop Director had when it considers a compassionate release motion properly before it.

## BLACK LAW DICTIONARY

Black Law Dictionary, defines extraordinary: as beyond what is usual, customary, regular, or common. (11th edition 2019). The same book defines compelling need, as a need so great that irreparable harm or injustice would result if not met. (11th edition 2019).

## COVID-19

The number of courts agreeing that the Covid-19 pandemic constitutes an extraordinary and compelling reason still grows by the day. E.G. (U.S. v. Williams, 2020 WL 3097615 At X 2. (D. Minn., June 11, 2020).

18.

U.S. v. Nazzal, 2020 WL 3077948 AT x4 (E.D. Michigan, June 10, 2020), U.S. v. Mason, 2020 WL 3045303 AT x2 (S.D. Miss. June 9, 2020), U.S. v. Connor, 2020 WL 3053368, AT x7 (N.D. Iowa, June 8, 2020), U.S. v. Moore, 2020 WL 2542529 (D. Oregon, May 21, 2020), U.S. v. Galloway, 2020, WL 2571721 (E.D. Michigan, May 21, 2020), U.S. v. Parker, 2020 WL 2572525 (C.D. Calif. May 21, 2020), U.S. v. Schneider, 2020 WL 2556354 AT 1 (C.D. Ill. May 20, 2020), U.S. v. Hill, 2020 WL 2542725 (D. Conn. May 19, 2020), U.S. v. Bright, 2020 WL 2537508 (W.D. VA., May 19, 2020), U.S. v. Bischoff, 2020 WL 2561423 (D.N.H. May 18, 2020), U.S. v. Cotinola, 2020, WL 2520717 AT x3 (D. New Mexico, May 18, 2020).

U.S. v. Rountree, 2020 WL 2610423 (N.D.N.Y. May 18, 2020), U.S. v. Johnson, 2020 WL 2515856 (D. D.C. May 16, 2020), U.S. v. Bess, 2020, WL 1940806, AT 9 (W.D. N.Y. April 22, 2020), U.S. v. Smith, 2020, WL 1849748 AT x4 (S.D. N.Y. April 13, 2020), U.S. v. Hernandez, 2020, WL 1684062, AT x3 (S.D. N.Y. April 2, 2020), U.S. v. Rodriquez, 2020 WL 1627331 AT x1, U.S. v. Jepsen, 2020 WL 1640232 AT x5 (D. Conn. April 1, 2020), U.S. v. Campagna, 2020 WL 1489829, AT x1 (S.D. N.Y. March 27, 2020).

Therefore, given the fact that petitioner Myahid, is 66-years old, black, inmate whom been reported and documented to have a higher rate of infection; incarcerated, and giving me no way to protect myself from a very deadly contagious disease that when the vaccine is approved and distributed inmates in prison would be the very last to recieve it, if are are to recieve it being

that so many americans has died from covid-19 and millions of people in society are infected with the coronavirus. The facts are because of my underlying conditions, and pre-existing medical conditions y creates a untenable risk of death, particularly with moderate asthma, and hepatitis-C.

MATTER OF FACT NUMEROUS courts had that release is absolutely justified when the inmate like myself suffers from pre-existing conditions that increase the likelihood of a lethal covid-19 case... SEE: U.S. V. Anderson, 2020, WL 2521513 AT x3 (C.D. Ill. May 18, 2020) (defendant suffered hypertension, a condition that increases the serious risk that covid-19 presented for the defendant). U.S. V. Goral, WL 1975824 AT x3 (D. Nev. April 24, 2020) (The court finds that "Asthma" falls squarely within the ambit of pre-existing conditions that the (CDC) have unambiguously explained placed him at risk; greater risk of covid-19). SEE: ALSO U.S. V. PARKS, 2020, WL 1970603 AT x3 (S.D. N.Y. April 24, 2020) Noting that according to the CDC people with ailments that cause trouble breathing, particularly "asthma", are at a significantly higher risk.) SEE: U.S. V. Colvin, 2020, WL 1613843 AT x3 (D. Conn. April 2, 2020).

There is no unit here at FCI, that would exclude me from being exposed to covid-19. And at present my unit is on quarantine, because several inmates have tested positive and removed to be quarantined somewhere else), and several officers and staff members has been infected in their

70.

community and brought the coronavirus into this prison. Colorado's infection rate has increased dramatically, and even the Governor of Colorado has tested positive for Covid-19, on November 28th, 2020. That's how rapidly, and widespread, this Covid-19 is spreading, and infecting people.

All inmates here in each unit come in contact with surfaces, staff members, and inmates in some kind of way daily. This contagious disease is known to live on surfaces for lengths of time, and the staff here pass out our trays for every meal, among pass out our mail, commissary, and other duties that inmates depend on daily. However, with the recent outbreaks, and some staff and officers testing positive and having to stay home to be quarantined, this have left a lot of officers, and staff afraid for their own lives.

Officers that has known petitioner for 20+ years or more, and are eligible to retire, told me personally that we inmates are sitting ducks, because once the virus spread through the unit they have no place to move, but a few inmates at a time because of the security measures of us being Supermax prisoners. See: Moore V. U.S. IN. 25 7 2824. APP x 2. (Some BOP facilities have seen outbreaks grow into hundreds of confirmed cases in a matter of weeks. The campers on this Florence compound that do our laundry, prepare our food in food service, work in the law library, and commissary have still been banned from coming into this SuperMax prison beginning November, 2020

because of a massive surge of outbreaks among the campers, so officers and other staff has been assigned to prepare our food in the food service, which has led to us receiving less food since they start using styrofoam trays instead of our regular trays. The commissary put us on spending restrictions, and closed because of shortage of staff, and the laundry has been closing on certain days.

Also many of the outside local hospitals are filled with Covid-19 cases, and that's how an inmate in my unit caught the coronavirus by being taken to St. Thomas Hospital, and forced our unit to be put on quarantine.

It is undeniable that an imprisoned American is more likely to contract Covid-19, than someone free in society. See: Timothy Williams, et al, Infection rates escalate in prisons, and fear among inmates, does too. New York Times (June 17, 2020) A.8. Thus, petitioner presents an extraordinary, and compelling reason that with my age, my underlying medical conditions, particularly with a moderate lung disease like asthma, with no ability to protect myself, and no ability to guarantee that the BOP could send me too to an outside hospital because of all of them being overcrowded with covid-19 patients from society. It would indeed constitute irreparable harm and injustice if petitioner contracted covid-19, which is deadly. And for those reasons alone (although there is others) this court should order resentencing for petitioner.

<u>SUPERMAX AND PETITIONER'S REHABILITATION</u>

To understand how extraordinary and compelling petitioner's 24-years of punitive punishment at this supermax is to be in a cell for 22, and at times 24-hours per day for the last almost quarter of a century and counting.

To accurately measure my rehabilitation one must compare the portrait of a madhouse portrayed in public record litigation in a class action lawsuit about the ADX in a action styled Cunningham v. Fed. Bureau of Prisons, Case No. 12-cv-01570 CMA, filed in U.S. District Court, June, 2012.

The Cunningham case was based on the known premise that years isolated in cells of this federal super max was known to cause or exacerbate mental illness, and cause a variety of physical decay. The lawsuit revealed that inmates committed suicide, many attempted suicide, and many more became shells of the men they used to be. The lawsuit reports inmates doing unimaginable and unspeakable things to their bodies, while clearly losing their minds. The lawsuit reveals inmates throwing feces, banging on walls, and stainless steel showers all day and night for months. Many inmates fight officers, and move teams resulting in being tear gassed with pepper spray and stun grenades, and beaten up by groups of officers with shields, and batons. The lawsuit was won and lead attorney, Deborah Golden, got all of the inmates in the lawsuit transported out of this supermax. But, still with the BOP changing the prison populations, and

closing SMU programs, and sending them inmates here. It's back to inmates with mental health problems that shouldn't be at ADX and an inmate just hung himself, and committed suicide in October, 2020.

This supermax creates a toxic hate factory of paranoia with inmates routing to kill each other if they make it to the step-down units. The ADX program statement claims that the ADX is a 3-year program, however many prisoners are kept here for ten, fifteen, or twenty years or longer like myself. The BOP averages around 200,000 inmates its system, but the ADX only hold 420-inmates in this prison, because of the security and custody levels, and the criteria for inmates to be approved to come here. This is beyond what is usual, regular or customary (i.e. the definition of extraordinary) to keep a man like me in a cell locked-up 22 to 23 hours a day for almost a quarter of a century.

It is almost unusual and extraordinary for an inmate to be housed in such negative environment to embrace change, redemption, and post sentence rehabilitation by trying to predominately keep clean conduct. But having a religious conversion, and becoming humble, non-violent, and non-radicalized and being a devout practicing muslim that prays 5-times a day, and these prison administration acknowledges my sincerity as a practicing muslim. This is why former warden. L.D. Berkebile, initiated petitioners for transfer recommendation for state prison, and the next 3-wardens did the same due to

24.

the fact that petitioner's clear conduct, spiritual growth, and not being recognized as a threat to staff or other inmates, and by steadfastly pursuing educational/rehabilitation courses that has resulted in approximately 75- educational certificates verifying petitioner's past sentence rehabilitation/that shows efforts has been unwavering and consistent proving reform.

Petitioner, as mentioned earlier that i am presently housed in the high security adult alternative housing program unit, which you must meet certain requirements to be in, and the warden, and all executive staff must approve in a special committee. The unit is unofficially known as the honor unit, and absolutely the most privileged unit in the ADX. For only inmates whom meet such criteria and requirements:
1. You must be 50- years old, or older.
2. No history of violence towards staff.
3. A minimum of 3- years of no assaultive behavior against other inmates.
4. A minimum of 1- year clear conduct in a regular housing unit.
5. Active participation and completion of all programs recommended by the unit team.
6. Positive behavior and respectful conduct towards staff and other inmates.
7. Positive and overall institution adjustment to include good hygiene, and clean cell sanitation. These facts are only a select and certain inmates can meet this requirement and criteria indicating reform. Therefore that's another extraordinary and compelling factor for this court to weigh in totality for petitioner to receive sentence reduction.



It should be noted that court's have used 3582 (C) (1) (A) any other extraordinary and compelling Reasons in the sentence commission's criteria in I.B. with a inmates rehabilitation to reduce 40-years of stacking 924 (C) sentences based on the premise that if he was sentenced today he would not be exposed to that mandatory penalty, even-though the new law in the First Step Act regards to 924 (C) stacking was not made retroactive, which confirms that courts under the "Any other Reason catch all clause" can consider equity and fundamental fairness, including 24-years in isolation at the Supermax, extraordinary and compelling, SEE: Urkevich v. U.S. 2019, U.S. Dist. C. Lexis 197408 (D.Neb. November 14, 2019); (40-years reduced on two stacked 924 (C) sentencing under 3582 (C) (1) (A).

When typically the court would not have the authority to do so without the "Any other extraordinary and compelling reason clause" for the court to decide what is extraordinary). SEE: U.S. v. Millian, 2020 U.S. Dist. Lexis 59453 (April 6, 2020) utilizing 3582 (C) (1) (A) after the petitioner served 28-years on a 848 (B) life term. The court considered that the disparity in sentencing combined with his rehabilitation warranted (time served). Moreover in U.S. v. McGraw, 2019 U.S. Dist. Lexis 48940, 2019 WL 2059488 (S.D. Indiana, May 2019.) the court in a compassionate release motion vacated a life sentence, and gave the defendant time-served after serving 17-years for poss. with intent to distribute methyamphetamine, despite his long criminal record

26.

and despite the fact that he occupied a leadership role in the infamous Diablo's motorcycle gang, but based on his medical condition the court vacated his life sentence.

In Regan v. U.S. 2020, U.S. Dist. Lexis 98412, June 3, 2020, the court found that placing a defendant in solitary confinement for the indefinite future is a severe and extreme measure to protect him from covid-19 under them circumstances. The defendant was isolated in his cell 22 1/2 hours a day, despite his elderly age, and good behavior given the last 24-years in prison. The court found his solitary confinement with his rehabilitation record in covid-19 pandemic extraordinary for relief. (Mind you this petitioner has been in solitary confinement for 24-years).

Also, another case is hopefully instructive and persuasive in this court's analysis and conclusion. See: U.S. v. Torres, 2020, U.S. Dist. Lexis 45343 (June 1, 2020) Defendant's Jorge and Victor Torres, moved for a sentence reduction under 18 U.S.C. 3582 (c)(1)(A), ECF No. 549; see, Defendant's memo of law ECF No. 550. The Torres brothers had been incarcerated nearly 33-years. They requested that the court reduce their 848(b) life sentence without parole to time-served. Their 848(b) conviction involved a large scale street level heroin distribution network, acquiring large sums of cash, which they used to purchase businesses and real estate holding up in Puerto Rico. One brother in the past suffered a stroke, and when he filed his motion, he also had high blood pressure and

diabetes. The other brother simply had arthritus and gallbladder stones. With these conditions and the pandemic, and their post sentence rehabilitation record, the court imposed time-served.

This petitioner was convicted for allegedly selling drugs to career criminals, and had no core contacts in prison after a reportedly 4-year investigation while in prison. The government produced no drugs (except $45.00 worth of supposedly heroin that another inmate peddled drifted to 3-years earlier). The government produced no money, or businesses homes, or cars or any evidence that a C.C.E. existed. Petitioner never met the five prong criteria that needs to be met to indict someone for C.C.E. (848)(B), & 846(B). Petitioner had been in prison for almost 22-years when i went to trial.

matter of fact i was so financially indigent at the time of my conviction the judge said at sentencing i know you don't have any money so i'm waiving a fine, and giving you a court assessment on a $250.00 court fee. moreover, not to diminish the seriousness of the convictions, but petitioner was never tied to or linked to any drug ring in the community, was never caught after any drugs in the illegal 4-year investigation, no-one was ever arrested for trying to bring me drugs on a visit. I was not accused for selling drugs in the community, and no-one from society testified that they gave me drugs or sold me drugs. The government only had inmates, and two convicted former officers who lied for plea bargains on their own drug cases they were arrested on.

The bottom line petitioner has evolved into a mature elderly man, measured change, rehabilitated who has spent 47-years and 4-months in prison since age 14-years old. I have been in this supermax prison for 24-years, and have lost five immediate family members, mother, 3-siblings, daughter and stepfather and numerous family and relatives whom were my support system.

These factors as they relate to petitioner among others, as a matter of law when considered in determining warrant time-served, or a reduced sentence with a close mandatory release date. If the government does not agree, petitioner request this honorable court in the interest of justice, appoint counsel. Allow counsel to amend this petition if he/she deems it's needed, or please order counsel to do a memorandum or law in support for a projected full new resentencing and new P.S.I. If this court doesn't grant time-served based on this pleading. See: Petitioner's motion for appointment of counsel.

Respectfully Submitted.

Dated: 12-18-2020

CERTIFICATE OF SERVICE

I, hereby certify that i served a true copy of this motion, first class mail postage prepaid to the published address of the U.S. Attorney's Office for the Eastern District of Virginia, Alexandria Division.

Khalif Abdul Qawi Mujahid
#19974-101

Dated: 12-18-2020          KHALIF ABDUL QAWI MUJAHID

24.