**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF VIRGINIA**

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 1:95-cr-53 |
| v. | |
| KEITH EUGENE GAFFNEY, | |
| *Defendant*. | |

**UNITED STATES' OPPOSITION TO DEFENDANT'S**
**RENEWED MOTION FOR RELEASE UNDER 18 U.S.C. § 3582(c)**

The United States, through undersigned counsel, opposes the defendant's renewed motion for release pursuant to 18 U.S.C. § 3582(c). As the Court is aware, in 1973, the defendant was convicted in D.C. Superior Court of horrific crimes (*see* ECF No. 203, at 3) and was sentenced to 24 years to life in prison. In 1995, at the age of 42, the defendant was convicted in this court of running a large-scale drug operation while in prison. His conduct included numerous acts of violence to further the aims of the conspiracy. The Honorable James C. Cacheris sentenced the defendant to life in prison, with the sentence to be served consecutively to the sentence imposed by the D.C. Superior Court.

At the end of 2020, the defendant filed a *pro se* motion for compassionate release, as well as a motion asking the Court to appoint an attorney to represent him. ECF Nos. 179-180. The Court appointed the Office of the Federal Public Defender to represent the defendant. ECF No. 182. After full briefing, the Court denied without prejudice the defendant's motion, concluding that "it would be premature to address the sentence imposed by this court until the status of defendant's District of Columbia sentenced is resolved." ECF No. 203, at 5.

1

The District of Columbia has now granted parole to the defendant (ECF No. 204-1) and he therefore again moves for release under § 3582(c). The defendant contends that he should be released due to the COVID-19 pandemic (ECF No. 183, at 7-17); because his "life sentence is unjust," as it was "imposed under the then-mandatory sentencing guideline regime that was later declared unconstitutional by the Supreme Court in *United States v. Booker*" (ECF No. 183, at 17-19); and because his various medical conditions mean he is "experiencing deteriorating physical … health because of the aging process that substantially diminishes [his] ability to provide self-care within the environment of a correctional facility and from which he … is not expected to recover." ECF No. 204, at 3-4 (quoting U.S.S.G. § 1B1.13 n.1) (internal quotation marks omitted).

The Court should deny the defendant's motion. He has not demonstrated that extraordinary and compelling reasons support his release, nor can he show that his release is consistent with the § 3553(a) factors. *See* 18 U.S.C. § 3582(c)(1)(A)(i).

## ARGUMENT

As relevant here, a court may "modify a term of imprisonment" "if it finds that extraordinary and compelling reasons warrant such a reduction" and a modification is appropriate in light of the § 3553(a) factors. *See* 18 U.S.C. § 3582(c)(1)(A)(i). Pursuant to a statutory delegation of authority in 18 U.S.C. § 994(t), the U.S. Sentencing Commission issued § 1B1.13 of the Sentencing Guidelines, which "describe[s] what should be considered extraordinary and compelling reasons" for a sentencing modification. In *United States v. McCoy*, the Fourth Circuit held that § 1B1.13 is not binding because it was issued prior to enactment of the First Step Act, which modified § 3582 by permitting prisoners to file motions on their own behalf instead of depending on the Bureau of Prisons. *See* 981 F.3d 271, 281-82 (4th Cir. 2020). The Fourth Circuit additionally held that § 1B1.13 retains "practical import" and can provide

"helpful guidance" in compassionate release cases. *See id.* at 282 n.7.

The United States incorporates its previous briefing in this case. *See* ECF Nos. 188, 192. Its response here is limited to a few important points of updating and emphasis, as well as addressing any new arguments raised in the defendant's renewed motion.

## I.  Extraordinary and compelling reasons do not merit release.

### A.  The defendant is not particularly susceptible to and does not face a particular risk of COVID-19.

In order to be eligible for release under § 3582 due to COVID-19, the defendant must show he faces "both a particularized susceptibility" to and a "particularized risk" from COVID-19. *See* ECF No. 203, at 2 (quoting *United States v. Feiling*, No. 3:19-cr-112, 2020 WL 1821457, at *7 (E.D.V.A. Apr. 10, 2020)) (citing *United States v. White*, No. 2:07-cr-150, 2020 WL 1906845, at *1 (E.D.V.A. Apr. 17, 2020)); *see also* ECF No. 188, at 11-22.

The defendant cannot meet either criteria. He is fully vaccinated. *See* ECF No. 191-1. While the CDC has recognized that breakthrough cases can occur, it has also noted that "there is evidence that vaccination may make illness less severe for those who are vaccinated and still get sick" and that "[t]he risk of infection, hospitalization, and death are all much lower in vaccinated compared to unvaccinated people." *See COVID-19 Vaccine Breakthrough Case Investigation and Reporting*, CDC, https://www.cdc.gov/vaccines/covid-19/health-departments/breakthrough-cases.html; *see also* ECF No. 204, at 3 (arguing that the defendant should be released "regardless of his vaccination status"). Further, as the government explained in its initial briefing, the CDC has documented conditions that "can" make individuals "more likely to get severely ill from COVID-19." *See People with Certain Medical Conditions*, CDC (last updated: Aug. 20, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. The defendant does not suffer from any condition listed by the CDC. *See* ECF

No. 188, at 15-19. While, as the Court acknowledged, the defendant identifies evidence that Hepatitis C may be a risk-factor (ECF No. 203, at 5) the CDC has not recognized the condition as such, and courts have rejected § 3582(c) claims based on Hepatitis C. *See* ECF No. 188, at 17-17 (citing cases involving Hepatitis C).

In any event, as of the date of this filing, there are currently zero inmate cases and three staff cases of COVID-19 at the defendant's facility. All told, since the start of the pandemic there have been two inmate cases and 35 total staff cases at the defendant's facility, which currently has a prison population of 338. *See* https://www.bop.gov/coronavirus/.

Because the defendant is fully vaccinated, does not suffer from any medical condition that increases his risk from COVID-19, and there are an extremely small number of cases at his facility, he cannot show that COVID-19 has created "extraordinary and compelling" reasons for his release.

### B.  The defendant's life sentence is not grounds for release under § 3582(c).

The Court should not grant release "on the ground that Mr. Gaffney's life sentence is unjust because it was imposed under the then-mandatory sentencing guidelines regime that was later declared unconstitutional by the Supreme Court in *United States v. Booker*." ECF No. 183, at 17; *see id.* at 17-19. The Supreme Court declined to give *Booker* retroactive effect beyond cases pending direct review or otherwise not final. *See* 543 U.S. 220, 268 (2005). The defendant's case was final when *Booker* was issued, and he is therefore not eligible for relief under the decision. *See* ECF No. 122 (docket entry noting exhaustion of the defendant's appeals on 1/16/1997). While not dispositive under *McCoy*, the Court should consider the Supreme Court's limits on applying *Booker*.

Under *McCoy*, the court is not *required* to grant a sentence modification, and this case is substantially different than *McCoy*, in which the Fourth Circuit granted relief under § 3582(c) to

three defendants convicted of "stacked" 924(c) charges. 981 F.3d at 274-75, 288. Defendant McCoy was convicted in a single proceeding of two counts of Hobbs Act Robbery (18 U.S.C. § 1951) and two counts of using firearms in connection with a robbery. *Id.* at 277. The defendant's Guidelines sentencing range for the robbery conviction was 37 to 46 months. *Id.* The first 924(c) conviction carried a seven-year mandatory minimum, while the second 924(c) conviction carried a 25-year mandatory minimum, to be served consecutively with each other and the robbery conviction. *Id.* The defendant was sentenced to 421 months (approximately 35 years)—32 years of which were because of the two "stacked" 924(c) convictions. *Id.* Defendants Bryant, Decator, and Scott were convicted of three "stacked" 924(c) offenses. *Id.* at 278. Those three "stacked" sentences resulted in a mandatory minimum sentence of 45 years for each defendant, with the three defendants receiving total sentences "between 52 and 53 years." *Id.* The Fourth Circuit affirmed the district courts' decisions to modify the defendants' sentences under § 3582(c), noting *both* the length of the sentences *and* the "gross disparity" between the sentences the defendants would receive under existing law. *Id.* at 285.

Unlike the defendants in *McCoy*, the defendant here cannot show a "gross disparity" between his life sentence and the sentence he would receive today. *See, e.g.*, *United States v. Weaver*, No. 1:17-cr-235, 2020 WL 4810123, at *2 (E.D. Va. Aug. 18, 2020) (defendant has burden to establish "extraordinary and compelling reasons" for release). His total offense level was 44, and he was criminal history category V, which resulted in a Guidelines range of life. *See* PSR Worksheet C. While the defendant would not automatically receive a life sentence today, he may well have received the same sentence if the Guidelines were not mandatory.

Moreover, the defendant cannot show his sentence was unnecessarily long. As outlined in the PSR, the defendant operated a large-scale drug operation within Lorton Reformatory

5

Correctional Complex between 1989 and 1994. PSR ¶ 6. The defendant began this operation approximately 15 years after being imprisoned for his crimes in Washington, D.C., at the age of 35 or 36. It is estimated that the defendant generated $1,000 in profits per day. PSR ¶ 10.

And he used violence to further the aims of his conspiracy. *See* PSR ¶ 7. In February 1992, for example, the defendant provided heroin to P.G. and M.W. as payment for stabbing R.M., an inmate. PSR ¶¶ 19-20. In March 1992, the defendant again provided heroin to M.W. as payment for stabbing D.W., who the defendant suspected of cooperating with law enforcement. PSR ¶ 35. A few months later, in June 1992, the defendant directed H.H. to throw scalding coffee at W.H., another inmate the defendant suspected of cooperating with law enforcement. PSR ¶ 36. In August 1992, the defendant provided heroin to B.N. to assault P.G., who the defendant suspected of cooperating with law enforcement. PSR ¶ 28. (The same P.G. involved in the February 1992 incident—this time a victim.) In June 1993, the defendant directed H.J. to repeatedly stab G.S. in the neck and chest. PSR ¶ 37. And in June and July 1993, the defendant and others plotted to murder a corrections officer who was "interfering" with the defendant's drug trafficking activities. PSR ¶ 30. This conduct was more than sufficient to support a life sentence and it is important to note that Judge Cacheris specifically ordered the life sentence to be served consecutive to the D.C. Superior Court's sentence.

## C. The defendant has not shown an inability to provide self-care in prison.

As noted above, while the Fourth Circuit has held that § 1B1.13 of the Sentencing Guidelines is not binding, it has also explained it can provide "helpful guidance." *McCoy*, 981 F.3d at 282 n.7. To that end, § 1B1.13 provides that "extraordinary and compelling reasons" for release may exist if the defendant is "suffering from a serious physical or mental condition that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G.

§ 1B1.13 n.1(A). In his renewed motion, the defendant contends that his "macular degeneration, in addition to his other chronic medical conditions," satisfy this requirement. *See* ECF No. 204, at 3-4. The defendant contends that treatment for his macular degeneration would "undoubtedly be easier to obtain outside of BOP" but also acknowledges that he is receiving injections designed to "slow the progression" of his condition. *Id.* at 3. The defendant also acknowledges that he is now receiving treatment for his Hepatitis C. ECF No, 183, at 11-12.[1] The defendant's remaining medical conditions, including an enlarged prostate, anemia, glaucoma, and hematuria range in their seriousness but appear to be manageable in prison and the defendant has offered no explanation as to how they prevent him from providing self-care in prison.

## II. The Section 3553(a) factors support the defendant's continued incarceration.

The United States' previous briefing has largely covered the reasons why the § 3553(a) factors do not support release, but a few points bear additional emphasis. The defendant contends that he should receive credit for "14 years of good conduct at BOP," including time spent at USP Florence Admax. ECF no. 183, at 19. He also emphasizes that he "is an elderly man unlikely to recidivate," and cites 2004 findings by the Sentencing Commission studying recividism. *Id.* at 20-21.

With respect to the Sentencing Commission's data, while it is true that recidivism generally declines based on how old defendants are *when they are sentenced*—with older offenders less likely to recidivate—the 2004 data show a 35.7 percent recidivism rate for offenders between age 41 and 50 at the time of their sentence with criminal history category V

---

[1] The defendant notes that his Hepatitis C went untreated for more than 20 years because BOP did not believe he had the disease, only to later discover an old, misplaced positive test from 1998. ECF No. 183, at 11-12. BOP obviously should have done better. The defendant is, however, currently receiving treatment, and there is no indication that treatment is currently inadequate.

(the defendant was 42 at the time he was sentenced for this offense, *see* PSR, at 1).[2] Overall, recidivism rates were over 50 percent for offenders in criminal history category V and nearly 50 percent for offenders with 12 criminal history points.[3] That data is supported by more recent analysis by the Sentencing Commission, showing that offenders within criminal history category V have a re-arrest rate of 77.8 percent, while those with 10 or more criminal history points have a re-arrest rate of 81.5 percent.[4]

Finally, setting aside population-level statistics about recidivism, the Court of course should not ignore the nature of the defendant's offenses. *See* 18 U.S.C. § 3553(a)(1). It is true that the defendant has been on good behavior since 2007. But the defendant's conduct up to that point was terrifying. The Court has already summarized the defendant's violent crimes that resulted in his conviction in D.C. Superior Court. *See* ECF No. 203, at 3. The Court should consider that criminal history in applying the § 3553(a) factors here. The defendant followed-up his 1973 crimes with additional extremely serious, violent conduct in this case, which occurred while he was incarcerated. The defendant's conduct illustrates that continued imprisonment is appropriate. *See* 18 U.S.C. § 3553(a)(1), (2)(A), 2(C).

---

[2] *Measuring Recidivism*, U.S. Sentencing Commission, at 28 (Exhibit 9) (2004), *available* at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_Criminal_History.pdf (hereinafter "Measuring Recidivism").

[3] *See* PSR Worksheet C; Measuring Recidivism, at 6-7. The Sentencing Commission uses two separate definitions for recidivism. The "primary definition" is either (a) re-conviction, (b) re-arrest with no conviction disposition available, or (c) a revocation of supervision. *Id.* at 4.

[4] *See Recidivism Among Federal Offenders*, U.S. Sentencing Commission, at 18-19 (2016), *available at*: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2016/recidivism_overview.pdf.

## CONCLUSION

The court should deny the defendant's motion for release under § 3582(c).

Respectfully submitted,

Raj Parekh
Acting United States Attorney

By:   /s/
Philip Alito
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone:   703-299-3806
Fax:   703-299-3980
Email:   Philip.Alito@usdoj.gov

Date: September 3, 2021

9

## CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.

/s/

Philip Alito
Assistant United States Attorney